RECEIVED
IN LAKE CHARLES, LA
MAY - 7 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JOHN QUIENALTY | : | DOCKET NO. 2:08 CV 01129 |
| VS. | : | JUDGE MINALDI |
| MICHAEL F. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Presently before the court is Claimant's petition for review of the Commissioner's denial of social security disability benefits. This matter is before the court pursuant to §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), this court finds that the Commissioner's decision is supported by substantial evidence in the record. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

### BACKGROUND

The Claimant, John Quienalty, was 43 years old at the time his insured status expired. Quienalty has a high school education. (Tr. 26). His past relevant work is as a denture maker, but he is no longer able to do that work (Tr. 26).

### PROCEDURAL HISTORY

Quienalty filed an application for Social Security Disability benefits with the Commissioner of Social Security on February 7, 2002.

Quienalty, a person of younger age (20 C.F.R. §404.1563 (d), was 43 years old, at the time

his insured status expired. He has a high school education and past relevant work experience as a denture maker. The Claimant is alleging disability beginning on July 15, 1997(the date he had back surgery), carpal tunnel syndrome in his dominant right hand and bipolar disorder (Tr. 16,26). He filed an application for Social Security Disability benefits with the Commissioner of Social Security on February 7, 2002.

The Claimant now seeks to have this court review the denial of disability benefits. Specifically, Claimant claims that the ALJ erred in the following ways:

    (1) the ALJ failed to evaluate the Claimant's impairments in the aggregate;

    (2) the ALJ's use of the medical vocational guidelines, Grid rule 201.09, was erroneous as a matter of law;

    (3) substantial evidence supports a conclusion that the Claimant meets the listings; and

    (4) the ALJ did not properly consider the treating source.

The Claimant seeks reversal rather than remand.

## STANDARD OF REVIEW

This court reviews the Commissioner's denial of social security benefits only to ascertain (1) whether the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.[1] Substantial evidence is that which a reasonable mind might accept to support a conclusion.[2] "It is more than a mere scintilla and less than a preponderance."[3] When we apply the substantial evidence standard, "we scrutinize the record to determine whether such evidence is present. We may not reweigh the evidence, try the issues *de*

---

[1] *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000).

[2] *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

[3] *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995) (internal quotation marks omitted).

*novo,* or substitute our judgment" for that of the Commissioner.[4]

In order to be eligible for disability benefits, the Claimant must prove that he has a medically determinable physical or mental impairment, or combination of impairments, lasting at least twelve months that prevents him from engaging in a substantial gainful activity.[5] Substantial gainful activity is defined as work involving significant physical or mental abilities that is usually done for pay or profit.[6]

The ALJ engages in a five-step sequential evaluation process for determining whether an individual is disabled: (1) whether the Claimant is presently engaging in substantial gainful activity; (2) whether the Claimant has a medically determinable severe impairment, as defined by regulations; (3) whether the Claimant's impairment or combination of impairments meets the criteria of an impairment listed in Appendix 1 of the regulations; (4) whether the impairment prevents the Claimant from doing his past relevant work; and (5) whether the impairment prevents the Claimant from doing any other work.[7]

Before considering the fourth and fifth steps, the Commissioner must determine the Claimant's residual functional capacity (RFC).[8] The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from his impairments. In determining the RFC, the Commissioner must consider all of a Claimant's impairments, including those that are not

---

[4] *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994) (citation omitted), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *see Newton,* 209 F.3d at 452.

[5] 42 U.S.C. § 423(d)(1)(A).

[6] 20 C.F.R. § 404.1572(a) and (b).

[7] *Id.* § 404.1520(a).

[8] *Id.* §404.1520(e).

severe.[9]

The Claimant bears the burden of proof on the first four steps and then the burden shifts to the Commissioner for the fifth step. If the Claimant shows he is no longer capable of performing his previous jobs, the Commissioner must show that the Claimant is capable of engaging in some type of alternative work that exists in the national economy.[10]

## COURT'S FINDINGS

### Evaluation of The Claimant's Impairments in the Aggregate

The Claimant submits that he produced medical evidence which supported the presence of the recognized exertional and non-exertional impairments of back surgery, carpal tunnel syndrome in his dominant right hand, and bipolar disorder (Tr. 16, 26). Quienalty argues that not only did the ALJ fail to evaluate his impairments in the aggregate, but he also discounted his pain entirely.

The Commissioner responded that the ALJ found that the Claimant's impairments, neither singularly nor in combination, met or equaled any listed impairment: bipolar disorder, a history of substance abuse, status post laminectomy, and right carpal tunnel release (Tr. 19, 26 [Finding 3]). As a result of his physical impairments, the ALJ limited the Claimant to performing no greater than light work activities, with some manipulative and postural limitations (Tr. 26 [Finding 5]).

The ALJ did, in fact, evaluate the Claimants impairments in the aggregate. The Claimant did not explain what "pain" the ALJ "ignored or improperly considered." Absent this clarification, this court cannot evaluate the merit of this argument.

### Use of the Medical Vocational Guidelines, Grid Rule 201.09

---

[9] *Id.* § 404.1545.

[10] *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987)

The Claimant asserts that reversal is mandated because the ALJ used the Medical-Vocational Guidelines (Grids) to determine disability.

The ALJ found that the Claimant could not perform a full range of light work activities because he experience nonexertional limitations that significantly eroded the job base. The decision by the Appeals Council stated:

> The Commissioner has taken administrative notice of the existence of jobs in the national economy in the Medical-Vocational Guidelines of the regulations (20 CFR, Part 404, Subpart P, Appendix 2). The "Rules" set forth in those guidelines indicate the incidence of work at various levels of exertion in the national economy and are used to adjudicate disability claims (20 CFR 404,1569). In evaluating the present claim, therefore, the Claimant's age, education, work history, and residual function capacity have been considered in conjunction with those guidelines to determine whether there were jobs existing in significant numbers in the national economy that he could have performed on and prior to December 31, 2003. ...". (Tr. 25)

The ALJ sought vocational testimony to ascertain whether there were a significant number of jobs the Claimant could perform due to the presence of the nonexertional limitations (Tr. 25).

Vocational evidence is not necessary if the Claimant's residual function capacity, age, education, and past work history exactly match one of the categories in the Grids. If the Claimant's characteristics do not match exactly, then the Grids do not apply and the ALJ may call a vocational expert. *Heckler v. Campbell*, 461 U.S. 458 (1983). The SSA must present vocational evidence that there are jobs in the economy that the Claimant can perform. The ALj may take judicial notice of the availability of jobs with specific vocational requirements. *Kuwahara v. Bowen*, 677 F. Supp. 553 (N.D.Ill. 1988).

An ALJ's determination of whether a Claimant can perform his or her past relevant work "may rest on descriptions of past work as actually performed or as generally performed in the national economy....." *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990) (citing 20 C.F.R. § 404.1566(d)(1)). *Alexander v. Astrue,* 412 Fed.App'x. 719, 722-723, 2011 WL 573518, 3 ( 5th Cir.

2011). The ALJ asked the vocational expert whether jobs existed in the national economy for a person of Quienalty's age, with his education, work experience, and physical limitations. The vocational expert testified that a person with the characteristics given in the ALJ's hypothetical question could work as a hand packer or packager, marking clerk, or weigher, measurer or checker. The Claimant does not argue that the hypothetical posed by the ALJ was in anyway defective.

Testimony by the vocational expert in this case, that the Claimant can perform a number of jobs suited to his capabilities, satisfies the Commissioner's burden of showing that the Claimant is not disabled. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980).

### Does substantial evidence support a conclusion that the Claimant meets the listings?

The Claimant argues that the ALJ should never have gotten to step four or five because Quienalty's combination of impairments "should have equaled a listing." Quienalty's brief, Argument III. Quienalty does not state which listing he believes he satisfies. It is his burden to prove which listing he satisfies. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Step three of the process provides, in relevant part: "If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience." 20 C.F.R. § 404.1520(d). The Claimant must provide medical findings that support *all* of the criteria for the Step three equivalent impairment determination. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). The Claimant has clearly not satisfied his burden.

### Did the ALJ properly consider the treating source?

Quienalty submits that Dr. Yadalam showed that Quienalty "due to his mental impairment cannot work." Quienalty's brief, Argument IV. He further claims that the June 2007 examination

by G. Jon Haag, Psy.D. (Tr. 340), "backs up" the opinion. In this case, however, Quienalty must establish a disabling condition prior to December 31, 2003, and Dr. Haag's 2007 opinion cannot be used to support his claim.

The Commissioner argues that the ALJ thoroughly discussed an undated statement from Dr. Yadalam that Quienalty's mental problems resulted in disabling limitations, but the ALJ properly rejected the opinion because it was not supported by any objective clinical findings (Tr. 20).

In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the "treating physician rule," which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.2009). The rationale behind the rule is that treating physicians are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the Claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Kalmbach v. Commissioner of Social Sec.*, 409 Fed.App'x. 852, 860, 2011 WL 63602, 7 ( 6th Cir. 2011).

The ALJ may reject an opinion of a Claimant's treating physician if the opinion is either (1) not supported by medical evidence, or (2) inconsistent with other substantial evidence in the record. *Id.*; *Spellman*, 1 F.3d at 364.

The ALJ must give a treating source opinion "controlling weight" if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still consider how much weight

to give it; in doing so, the ALJ must take into account the length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairment(s), the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and any other relevant factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6).

The ALJ's decision as to how much weight to accord a medical opinion must be accompanied by "good reasons" that are "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5. This procedural "good reason" rule serves both to ensure adequacy of review and to permit the Claimant to understand the disposition of his case. *Rogers,* 486 F.3d at 242.

The Commissioner argues that Dr. Yadalam's conclusory assessment of severe mental limitations was not consistent with the treatment notes (Tr. 20-21). Dr. Yadalam began treating Quienalty in December 2001; therefore, he lacked any treating relationship with Claimant from July 1997 to December 2001. Treatment notes from December 2001 through June 2003 generally describe the Claimant as experiencing only mild to moderate symptoms, enjoying normal status examinations, and a Global Assessment of Functioning (GAF) of 55 (Tr. 20, 266, 313-322).[11] When provided the opportunity, Dr. Yadalam did not state the clinical findings that supported his opinion, but only generally listed the dates he saw Claimant, thus satisfying one of the two reasons why the

---

[11] The GAF is a numerical score from 0 to 100 that 3 considers the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." A GAF of 51-60 indicates: "Moderate symptoms (e.g. flat effect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." *See Diagnostic and Statistical Manual of Mental Disorders IV-TR* p. 34 (4th ed. 2000).

ALJ could reject his opinion (Tr. 20, 311). Some reports also revealed that Claimant enjoyed improvement in his bipolar disorder with medication[12] (Tr. 20, 318, 320).

Other evidence supports the ALJ's finding that Claimant's bipolar disorder was not disabling. A November 1999 examination by Dr. Bernauer described "paucity of findings," and he considered Claimant able to work with his few limitations (Tr. 245). Lawrence Dilks, Ph.D., examined Claimant in April 2002, and considered Claimant "capable of obtaining some form of gainful employment," as his bipolar disorder resulted in few limitations (Tr. 276-279). Dr. Tarrand and State Agency physicians also reviewed the medical records and opined that Claimant's impairments would not result in disabling limitations (Tr. 280-297, 332-338).

Accordingly, the ALJ did properly consider Dr. Yadalam's opinion.

## CONCLUSION

Finding substantial evidence to support the denial of Quienalty's application for disability insurance benefits, the Commissioner's administrative decision is AFFIRMED.

Lake Charles, Louisiana, this ____ day of May, 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[12] Impairments that reasonably can be remedied or controlled by medication or treatment are not disabling. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).